UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CSC, a minor, by his parents and next friends, PATOYA BRYANT and SEAN COBBS, and PATOYA BRYANT and SEAN COBBS, individually, <br><br>              Plaintiffs, <br><br>   v. <br><br>UNITED STATES OF AMERICA; SOUTHERN ILLINOIS HOSPITAL SERVICES, an Illinois corporation, d/b/a Memorial Hospital of Carbondale; ERIN M. SHAW; and ANGELA L. BOATRIGHT, <br><br>              Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2010-cv-0910-DRH-SCW |

**UNITED STATES OF AMERICA'S TRIAL BRIEF REGARDING**
**THE COLLATERAL SOURCE RULE**

Now comes defendant, United States of America, by its attorneys, Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Nathan E. Wyatt, Assistant United States Attorney and states as follows.

Any award to Plaintiffs in this case should not include costs for future care and services that CSC is eligible to receive pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.

Originally enacted in 1975 as the Education of the Handicapped Act, the IDEA (20 U.S.C. §§ 1400 to 1491) is the primary source of federal aid to state and local school systems for instructional and support services to children with disabilities. The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public

education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living." 20 U.S.C. § 1400(d)(1)(A). Consistent with this purpose, the IDEA authorized federal financial assistance to States that agree to provide disabled children with special education and related services. *See* 20 U.S.C. § 1411. The term "related services" includes "transportation, and such development, corrective, and other supportive services (including . . . medical services, except such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(22). In other words, related services are those "that enable a disabled child to remain in school during the day [to] provide the student with the meaningful access to education that Congress envisioned." *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73 (1999) (citation and internal quotation marks omitted).

Further, the IDEA implementing regulations provide that the related services "must be individually determined in light of each child's unique abilities and needs, to reasonably promote the child's educational success." 24 CFR Pt. 300, App. A. Depending on the circumstances, counseling, therapies, residential placement and even skilled nursing services may be required, although medical services, defined as "services provided by a licensed physician," 34 CFR § 300.13(b)(4) are excluded unless for purposes of diagnoses and evaluation only.

Under the IDEA, schools evaluate each child with a disability to develop and implement an individualized education program (IEP) for each child, specifying educational and developmental goals for the child. *See generally* 20 U.S.C. § 1414. An IEP team consists of several people, including the child's regular education teacher, a special education teacher, a local education agency official, the child's parents, and when appropriate, the child. 20 U.S.C. §

1414(d)(1)(B).  The IEP team develops each child's IEP, which must include a statement of the child's present levels of educational performance; a statement of annual goals, including long and short-term objectives; a statement of the specific special education and related services to be provided to the child; a statement of the transition services needed by the child, where applicable; the projected date on which the services will begin and their anticipated duration; and objective criteria and evaluation procedures to be used to determine whether the instructional objectives are being achieved.  *See* 20 U.S.C. § 1414(d)(1)(A).  The local educational agency shall ensure that the IEP team reviews the child's IEP periodically, but not less than annually, to determine whether the child is achieving the annual goals.  20 U.S.C. § 1414(d)(4).

Because federal law entitles CSC to several hours per week of care and services pursuant to IDEA, those are hours for which CSC's parents do not need to procure nursing care and other services.  Thus, any award should be reduced to account for the number of hours per week CSC is eligible and capable of being cared for in an educational setting pursuant to IDEA, and the services received while in that setting.  The life care plan drafted by the government's expert, Shay Jacobson, merely takes into account the services CSC has been provided and will continue to be provided via the IDEA program.

As the Plaintiffs point out, Illinois law does include a collateral source rule, which provides that "benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Arthur v. Catour*, 803 N.E.2d 647, 649 (Ill.App. 2004).  In the present case, however, services provided by the State of Illinois to CSC pursuant to the IDEA are federally funded.  *See* Ex. A, Illinois State Board of Education Proposed Budget for Financial Year 2014, pp. 66-68 (stating that "[r]egardless of the [state] appropriation amount, Illinois State Board of Education can only

3

spend amounts equal to what has been awarded by the federal government").[1] Thus, IDEA benefits are not from a "source wholly independent" of the United States. In an FTCA case, where the federal government is already legally obligated to provide benefits to the injured party, the collateral source rule does not apply. *See, e.g., Overton v. United States*, 619 F.2d 1299, 1307-09 (8th Cir. 1980); *Rodriguez v. United States*, No. 03-CV-186-MJR, 2004 WL 3334470, *10-11 (S.D.Ill. Nov. 15, 2004).

If the Court reaches the issue of damages, then it is the plaintiff's burden to show what future care will be required and at what expense. In determining the award for future care, if any, the Court should take into account the services that are available to CSC for free through the IDEA program. Future care costs should not include costs for attendant care during hours spent in school, or for therapies, devices and equipment provided through the IDEA program. Ignoring the benefits CSC is entitled to receive during his remaining years in school under the IDEA program would result in a double recovery for the Plaintiffs and effectively a double payment by the federal government. Further taking such benefits into account when determining an appropriate award is no more speculative than attempting to determine what CSC's future care needs will be.

For all of the reasons stated above, it is appropriate for Ms. Jacobson to consider in her analysis and to testify about the free services that CSC will receive during his remaining years in school through the IDEA program.

---

[1] The entire Board of Education Proposed Budget is publicly available and can be seen in its entirety at http://www.isbe.state.il.us/budget/FY14/FY14-budget-book.pdf

Respectfully submitted through,

STEPHEN R. WIGGINTON
United States Attorney

*/s/ Nathan E. Wyatt*

NATHAN E. WYATT
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700
E-mail: Nathan.Wyatt@usdoj.gov

5